UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE PERKINS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>                              Defendant. | Case No.:  25-CV-1305 TWR (VET)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DISMISSING WITHOUT PREJUDICE THE COMPLAINT**<br><br>(ECF No. 8) |

Presently before the Court is Defendant The Procter & Gamble Company's Motion to Dismiss ("Mot.," ECF No. 8), as well as Plaintiff Valerie Perkins's Response in Opposition to ("Opp'n," ECF No. 10) and Defendant's Reply in Support of ("Reply," ECF No. 11) the Motion.  Having carefully considered the Complaint ("Compl.," ECF No. 1-2), the Parties' arguments, and the relevant law, the Court **GRANTS** Defendant's Motion and **DISMISSES WITHOUT PREJUDICE** the Complaint in its entirety.

## BACKGROUND[1]

Throughout 2022, Plaintiff purchased Defendant's "ZzzQuil Pure Zzzs" sleep-aid melatonin products (the "Products") from various retail stores in El Cajon, California.

---

[1] For purposes of Defendant's Motion, the facts alleged in Plaintiff's Complaint are accepted as true. *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

1

(Compl. ¶ 12.)  The Products prominently display the slogan "HELPS YOU FALL ASLEEP NATURALLY" on their front labels.² (*Id.*)  This slogan, presented in bold green lettering and accompanied by an asterisk, is often supplemented by a secondary tagline, such as "NO NEXT DAY GROGGINESS," "WAKE UP READY TO TAKE ON YOUR DAY," or "DRUG FREE."  (*See id.* at 40–49.)³  For example, "Melatonin + Chamomile & Lavender Gummies" are sold in the following packaging:



(*Id.* at 42.)  Relying on the Products' labels, Plaintiff purchased the Products in part because she believed that they were "free of synthetic ingredients." (*Id.*)  In reality, "the Products contain several artificial and synthetic ingredients," including melatonin, the Products' primary ingredient.  (*Id.* ¶¶ 7, 29–54.)

---

²     The Complaint identifies seven different products ("Melatonin + Chamomile & Lavender Tablets," "Melatonin + Chamomile & Lavender Gummies," "Enhanced Formula Melatonin," "Sleep + Muscle Relaxation Gummies," "Sleep + Next Day Energy Tablets," "Back to Sleep Tablets," and "Kidz Melatonin + Chamomile & Lavender Gummies"), the labels of which differ slightly.  (*See id.* at 40–49.) All display the same slogan, with the following exceptions: "Enhanced Formula Melatonin" displays the slogan "HELPS YOU NATURALLY FALL ASLEEP FAST," "Back to Sleep Tablets" displays the slogan "HELPS YOU FALL BACK ASLEEP NATURALLY IN THE MIDDLE OF THE NIGHT," and "Kidz Melatonin + Chamomile & Lavender Gummies" displays the slogan "HELPS YOUR CHILD FALL ASLEEP NATURALLY."  (*Id.* at 44, 47–49.)

³     All page-specific citations refer to the page numbers generated by the electronic case filing ("ECF") system located in the top right corner of each document.

On April 1, 2025, Plaintiff filed this putative class action in which she asserts claims under California's Consumers Legal Remedies Act, Cal, Civ. Code §§ 1750–1784 (the "CLRA"), and Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200–17210 (the "UCL"). (Compl. ¶¶ 87–109.) Specifically, Plaintiff alleges that the Products' labels are "false, deceptive, and misleading" because "[a] reasonable consumer understands the representation that a Product 'naturally' helps sleep to mean that none of its ingredients are synthetically created." (*Id.* ¶¶ 2, 18.) On June 27, 2025, Defendant moved to dismiss the Complaint, (*see* Mot.), and the Court held a hearing on Thursday, September 11, 2025. (*See* ECF No. 12.)

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). If the court dismisses a complaint for failure to state a claim under Rule 12(b)(6), the "court should grant leave to amend even if no request

to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## ANALYSIS

Defendant argues that Plaintiff's CLRA and UCL claims must be dismissed under Rule 12(b)(6) because the Complaint fails to plausibly allege consumer deception under the reasonable consumer standard. (ECF No. 8-1 ("Def.'s Mem.") at 10:9–17:17.[4]) "Claims under [both the CLRA and UCL] are governed by the 'reasonable consumer' standard, which requires a plaintiff to 'show that members of the public are likely to be deceived' by the defendant's marketing claims." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "The reasonable consumer standard requires more than a mere possibility that the label 'might conceivably be misunderstood by some few costumers viewing it in an unreasonably manner.'" *Id.* (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Ebner*, 838 F.3d at 965). Although "'California courts have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision at the pleadings stage[,]' . . . [d]ismissal is appropriate when 'the advertisement itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be deceived.'" *Id.* (alterations adopted) (quoting *Williams*, 552 F.3d at 938–39).

/ / /

/ / /

---

[4] Defendant also argues that Plaintiff lacks standing to sue for injunctive relief. (Def.'s Mem. at 17:18–18:8.) Because Defendant's Rule 12(b)(6) argument is dispositive, the Court need not address this argument.

## I. CLRA and UCL Claims Involving Allegedly Deceptive Product Labels

When a defendant moves to dismiss CLRA and UCL claims targeting an allegedly deceptive product label, courts in the Ninth Circuit begin by evaluating the product's front label. *See id.* at 779–781; *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097–98 (9th Cir. 2023). A product's front label often resolves the motion; if not, the front label determines what additional context the court may consider at the pleading stage. *Whiteside*, 108 F.4th at 779–80; *Mcginity*, 69 F.4th at 198–99. There exist three possibilities.

The first possibility is that the front label cannot plausibly deceive a reasonable consumer in the manner alleged in the complaint. *E.g.*, *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) ("[N]o reasonable consumer would assume that Diet Dr Pepper's use of the term 'diet' promises weight loss or management."); *Ebner*, 838 F.3d at 966 (holding that the net weight statement on front label of lip balm tube would not deceive a reasonable consumer into believing the entire lip product "will clear the tube's opening"). Courts reaching this conclusion often determine that the alleged deception is merely the result of an unfounded assumption on the part of the consumer. *See Becerra*, 945 F.3d at 1229–30; *Ebner*, 838 F.3d at 966. In these circumstances, dismissal is appropriate. *See Becerra*, 945 F.3d at 1231; *Ebner*, 838 F.3d at 966.

The second possibility is that the front label is unambiguously deceptive and could plausibly deceive a reasonable consumer in the manner alleged in the complaint. *E.g.*, *Whiteside*, 108 F.4th at 782 ("Although 'plant-based' could be interpreted in different ways, it plausibly conveys a concrete and unambiguous meaning to a reasonable consumer: that the product is entirely plant-based[.]"); *Williams*, 552 F.3d 934 ("[T]he statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural[.]"). A front label is unambiguously deceptive if "the plaintiff has plausibly alleged that a reasonable consumer would view the label as having one unambiguous (and deceptive) meaning." *Whiteside*, 108 F.4th at 780. At the pleading stage, the court cannot inquire beyond an unambiguously misleading front label; additional context available to

the consumer—including the back-label ingredient list—cannot cure a deceptive front label. *Id.* at 782–83; *McGinity*, 69 F.4th at 1098 ("[I]f a defendant does commit an act of deception on the front of a product, then 'the presence of fine print revealing the truth is insufficient to dispel that deception.'" (emphasis omitted) (quoting *Ebner*, 838 F.3d at 966)). In these circumstances, the complaint survives a motion to dismiss for failure to state a claim. *Whiteside*, 108 F.4th at 783.

The third and final possibility is that the front label is ambiguous. *E.g.*, *McGinity*, 69 F.4th at 1098 ("[T]he front label containing the words 'Nature Fusion' is not misleading—rather, it is ambiguous."); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) ("[T]here is some ambiguity as to what '100%' means in the phrase, '100% New Zealand Manuka Honey.'"). "A front label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation." *Whiteside*, 108 F.4th at 781. If the front label is ambiguous, the court can consider additional context available to the consumer—such as the back-label ingredient list—to determine whether the label could plausibly deceive a reasonable consumer. *McGinity*, 69 F.4th at 1099 ("[When] a front label is ambiguous, the ambiguity can be resolved by reference to the back label."); *see also Trader Joe's*, 4 F.4th at 882 (holding that courts faced with an ambiguous front label can consider other "information available to a consumer[, which] is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging").

## II. The Products' Allegedly Deceptive Labels

Turning to the front labels of the Products at issue here, the slogan "HELPS YOU FALL ASLEEP NATURALLY" appears in bold, green letters. (Compl. ¶ 1, at 40–49.) That slogan forms the core of the present dispute. Plaintiff alleges that the Products' front labels are unambiguously deceptive because the slogan could cause a reasonable consumer to believe that the Products do not contain synthetic or artificial ingredients. (*Id.* ¶¶ 12, 18, 55, 60, 94, 105.) Defendant argues that the front labels unambiguously describe the

/ / /

biochemical process by which the Products induce sleep and that no reasonable consumer would interpret the slogan as describing the Products' ingredients. (Def.'s Mem. at 12:25–13:6.)

There exists some ambiguity as to the meaning of the word "naturally" as used in the Products' slogan. "Naturally" has two relevant definitions: (1) "according to the usual course of things; as might be expected," and (2) "without artificial aid." *Naturally*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/naturally (last visited Aug. 26, 2025). The first definition unambiguously supports Defendant's interpretation of the slogan: the Products help one "fall asleep 'according to the usual course of things'" because the Products act upon the innate hormonal pathway by which the human body ordinarily induces sleep.

The second definition of "naturally," however, introduces some ambiguity. Consistent with Defendant's view, a reasonable consumer could interpret "fall asleep 'without artificial aid'" to mean "fall asleep 'without the aid of pharmaceutical sedatives.'" Nevertheless, viewing the allegations in the light most favorable to Plaintiff, a reasonable consumer could also interpret "fall asleep 'without artificial aid'" to mean "fall asleep 'without artificial or synthetic ingredients.'" Although the Court agrees with Defendant that a consumer would most reasonably understand the slogan to be "distinguish[ing] the melatonin supplements from other sleep aids that do not operate on the body in a way that occurs naturally," (Def.'s Mem. at 13:1–3), the Court must resolve all factual disputes in Plaintiff's favor at this stage. Because the Products' front labels are—for purposes of the pleading stage—ambiguous, "reasonable consumers would necessarily require more information before they could reasonably conclude" whether the Products contain only natural ingredients. *See Trader Joe's*, 4 F.4th at 882; *see also McGinity*, 69 F.4th at 1098–99. Accordingly, the Court must consider other available information to determine whether the label could plausibly deceive a reasonable consumer. *McGinity*, 69 F.4th at 1099; *Trader Joe's*, 4 F.4th at 882.

/ / /

"[When] a front label is ambiguous, the ambiguity can be resolved by reference to the back label." *McGinity*, 69 F.4th at 1099. Here, as in *McGinity*, the Products' back-label ingredient lists dispel any ambiguity created by the front labels. The back labels catalogue twenty-five synthetic ingredients. (Compl. ¶¶ 29–54.) Although a reasonable consumer may not know whether some ingredients are synthetic, many ingredients—such as Red 40, Red 40 Lake, Blue 1, Blue 1 Lake, Acesulfame Potassium, and Hydroxypropyl Methylcellulose—are unmistakably synthetic.[5] *See McGinity*, 69 F.4th at 1099. It is not plausible that a reasonable consumer, after consulting the ingredient lists, could conclude that the Products are free from synthetic ingredients.[6] Therefore, the Complaint fails to allege sufficient facts plausibly to show that a reasonable consumer would be deceived by the Products' labels.[7]

Arguing against dismissal, Plaintiff relies on several district court decisions. (Opp'n at 12:12–14:15.) First, Plaintiff cites four cases involving front labels that unquestionably describe the products' ingredients. (*Id.* at 13:12–14:6 (first citing *Pecanha v. The Hain Celestial Grp., Inc.*, No. 17-CV-04517-EMC, 2018 WL 534299 (N.D. Cal. Jan. 24, 2018); then citing *Shank v. Presidio Brands, Inc.*, No. 17-CV-00232-DMR, 2018 WL 510169 (N.D. Cal. Jan. 23, 2018); then citing *Moore v. GlaxoSmithKline Consumer Healthcare*

---

[5] The Complaint alleges that "[c]onsumers would not know the true nature of the ingredients merely by reading the ingredient label." (Compl. ¶ 55.) Although the Court must "accept factual allegations in the complaint as true[,]" *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). As a matter of law, a reasonable consumer who has read the ingredient list would understand that some of the Products' ingredients are synthetic.

[6] Plaintiff emphasizes the labels' use of green font and "natural imagery." (Compl. ¶¶ 19–20.) At most, these features augment the ambiguity of the front label. They do not permit a reasonable consumer to ignore the back label, which plainly obviates any confusion.

[7] Plaintiff challenges seven different products, each of which contains different ingredients. (*See* Compl. ¶¶ 6, 29–54, at 40–49.) The Complaint does not, however, include any specific allegations differentiating the Products based on whether they contain ingredients that are unidentifiably synthetic to a reasonable consumer.

*Holdings (US) LLC*, No. 20-CV-09077-JSW, 2021 WL 3524047 (N.D. Cal. Aug. 6, 2021); then citing *Gregorio v. Clorox Co.*, No. 17-CV-03824-PJH, 2018 WL 732673 (N.D. Cal. Feb. 6, 2018)).)  These cases are inapposite.  *Pecanha* involved deodorant labeled as "pure natural," 2018 WL 534299 at *3; the products in *Shank* displayed the phrases "naturally derived" and "only naturally derived ingredients," 2018 WL 510169 at *1–2; *GlaxoSmithKline* concerned lip balm labeled "100% natural," "natural," and "100% naturally sourced ingredients," 2021 WL 3524047 at *8; and the cleaning products in *Gregorio* bore the phrase "naturally derived," 2018 WL 732673 at *4–5.  Because the front labels in these cases clearly and explicitly used the terms "natural" and "naturally" to describe the products' ingredients, the front labels were unambiguously deceptive, and the back or side labels could not cure the alleged deception at the pleading stage.  *See Whiteside*, 108 F.4th at 782–83.  Because the front labels in the instant case use the term "naturally" to describe *how the products help one fall asleep*, however, the front labels are, at most, ambiguous as to the Products' ingredients, and the Court may consider the back-label ingredient lists.

Next, Plaintiff relies on two cases in which the labels at issue used the term "naturally" in a manner similar to the Products' use of the term in this case (*i.e.*, to describe the products' function, rather than the products' ingredients).  (Opp'n at 12:12–13:11 (first citing *Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC, 2018 WL 4538729 (N.D. Cal. Sept. 21, 2018); then citing *Comfort v. Ricola USA, Inc.*, No. 19-CV-6089 CJS, 2019 WL 6050301 (W.D.N.Y. Nov. 15, 2019)).)  Specifically, the body lotion at issue in *Gasser* displayed the phrase "nourish naturally with our botanical blends," 2018 WL 4538729 at *4–5; and *Comfort* involved cough drops labeled as "naturally soothing," 2019 WL 6050301 at *1.  Nevertheless, both cases differ substantially from the instant case.  The complaint in *Gasser* survived the defendant's motion to dismiss because the parties disagreed as to whether one ingredient, caprylic/capric triglyceride, was synthetic.  2018 WL 4538729 at *4.  The district court determined that, at the pleading stage, it could not take judicial notice of materials that supported the defendant's argument that the disputed

ingredient was naturally derived. (*Id.*) Here, by contrast, the Parties agree that the Products contain synthetic ingredients. *Comfort* is also distinguishable because the district court in that case was bound by Second Circuit precedent that differs from Ninth Circuit precedent regarding ambiguous front labels. *Compare Comfort*, 2019 WL 6050301 at *4 ("The Second Circuit's decision in *Mantikas[ v. Kellog Co.*, 910 F.3d 633 (2d Cir. 2018),] does not support [the defendant company]'s argument that labeling on the front of a package could be ambiguous and that additional labeling on the sides or back could clarify the ambiguity and render the front of the package not deceptive."), *with McGinity*, 69 F.4th at 1099 ("[When] a front label is ambiguous, the ambiguity can be resolved by reference to the back label.").

Lastly, Plaintiff cites to *Adler v. Altsleep, LLC*, No. 2:22-CV-05854-JLS-KS, 2023 WL 3080757 (C.D. Cal. Feb. 7, 2023), a case involving false advertising claims related to a melatonin-containing sleep-aid product. The product at issue was named "Alteril Natural Sleep Aid" and "prominently display[ed] the 'natural' description on [its] packaging[.]" *Id.* at *1, *5. Because the defendant used the term "natural" to broadly describe its product, the label was comparable to those bearing "similar 'natural' statements," such as "100% natural" and "naturally sourced." *Id.* at *6. As discussed above, *see supra* pages 6–7, the labels at issue in the instant case use the term "naturally" to describe how the Products function—not to describe the Products themselves.

*Gonzalez v. Chattem, Inc.*, No. 23-CV-00102-HSG, 2023 WL 8101923 (N.D. Cal. Nov. 21, 2023), serves as a better guide for evaluating melatonin-based products that use the term "naturally" to describe how the products induce sleep. The plaintiff in *Gonzalez* brought consumer deception claims based on the defendant's melatonin products, which bore labels displaying the phrase "GET A GOOD NIGHT'S SLEEP, NATURALLY." *Id.* at *1. Ruling on the defendant's motion to dismiss, the district court determined that the label was ambiguous because, "[w]hile the Product certainly makes no affirmative promise of being all-natural, . . . a reasonable consumer might conclude that for a product to work 'naturally' with one's sleep cycle, the product's components must themselves be natural."

*Id.* at *5. The court therefore concluded that "a reasonable consumer considering the ambiguous phrase 'naturally' would need additional information . . . to interpret its meaning." *Id.* at *6 (citing *McGinity*, 69 F.4th at 1097). Faced here with nearly identical products and labels, the Court similarly concludes that the Products' front labels are ambiguous and that a reasonable consumer would require additional information.

The parallels between this case and *Gonzalez* end, however, once the Court moves to the back-label ingredient lists. The court in *Gonzalez* denied the defendant's motion to dismiss because the court could not determine as a matter of law that a reasonable consumer would know that citric acid and sodium citrate—the non-natural ingredients listed on the challenged product's back label—were synthetic. *Id.* at *6. Specifically, the district court distinguished the ambiguously synthetic ingredients in the challenged products from unmistakably synthetic ingredients in other products. *Id.* ("[U]nlike in *McGinity* (which concerned a back label disclosing ingredients like Yellow 5 and guar hydroxypropylitrimonium chloride), the parties disagree as to what reasonable consumers would understand about the Product's ingredients.") Here, the synthetic ingredients at issue distinguish this case from *Gonzalez*. As a matter of law, a reasonable consumer would know that some of the Products' ingredients—which include Red 40, Red 40 Lake, Blue 1, and Blue 1 Lake—are synthetic.

The Court finds that the Products' labels are not deceptive because no reasonable consumer, after reading the front label together with the back label, would plausibly believe that the Products are free from synthetic ingredients. Accordingly, the Court **GRANTS** Defendant's Motion and **DISMISSES WITHOUT PREJUDICE** the Complaint in its entirety. Because it is not entirely clear that it would be futile for Plaintiff to amend her Complaint, the Court **GRANTS** Plaintiff leave to amend.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss, **DISMISSES WITHOUT PREJUDICE** the Complaint in its entirety, and **GRANTS** Plaintiff leave to amend. Plaintiff **MAY FILE** an amended complaint on or before

October 24, 2025.  ***Should Plaintiff fail timely to file an amended complaint, the Court will dismiss this case without prejudice.***

**IT IS SO ORDERED.**

Dated:  September 29, 2025

_____
Honorable Todd W. Robinson
United States District Judge